UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| STEVEN TURNER, et al., | : | |
| | : | NO. 1:11-CV-260 |
| Plaintiffs, | : | |
| | : | **OPINION & ORDER** |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HUMANA, INC., | : | |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 24), Plaintiffs' Response in Opposition (doc. 27), and Defendant's Response in Support (doc. 33). The Court held a hearing on the motion on May 24, 2012. For the following reasons, the Court GRANTS Defendant's motion (doc. 24).

**I.  BACKGROUND**

Plaintiff Steven Turner was hired by Defendant Humana Pharmacy, Inc. d/b/a RightSource[1] in December 2008 as an Inventory Control Manager to work in its West Chester, Ohio facility. He was hired to help Defendant begin distributing pharmaceuticals from the West Chester location by March 2009.

---

[1] As Defendant brought to the Court's attention, Plaintiff named "Humana, Inc." as Defendant, but the proper Defendant is Humana Pharmacy, Inc. d/b/a RightSource.

Specifically, he was to hire inventory staff, train the staff, implement the warehouse management system, set up procedures, and ensure that systems were running properly. Mr. Turner had prior experience in warehouse inventory systems and was certified in implementing them, and that experience and those certifications contributed to the company's decision to hire him.

Mr. Turner's wife, Plaintiff Jane Turner, has Type I diabetes and heart disease, so understanding the extent of Defendant's health care benefit was important to them. Consequently, they spoke with several employees of Defendant about the benefit and, in the course of those conversations, shared with those employees information about Mrs. Turner's health conditions. Specifically, according to Plaintiffs, they spoke with Mr. Turner's direct supervisor Dan Brais, the recruiter, the pharmacist in charge of the West Chester facility, a secretary whose husband also has diabetes, and the Dispensing Manager Ken Shapiro, who worked near Mr. Turner.

In May 2009, Mr. Turner informed his supervisor Dan Brais that he would need to be out of the office for a couple of days because Mrs. Turner had to have a cardiac procedure done, and in July of 2009 Mr. Turner advised Brais that he would need to miss a meeting because Mrs. Turner needed to be evaluated by

a retinal specialist. In June 2009, Mr. Turner was placed on a "Competency and Contribution Improvement Plan", which read in part, "Since being provided with coaching and feedback on May 1, 2009 regarding meeting deadlines and communicating expected delays in deadlines, your performance has continued to fall below expectations." It then outlined several specific areas where Mr. Turner's performance had fallen short: he failed to draft job responsibilities for his staff and failed to explain why he had not done so; he failed to enroll in specific classes for leadership development training; and he missed several deadlines related to the company's inventory process. Mr. Turner was warned that "[i]f sufficient improvement is not shown immediately, and these, along with other expectations of your role are not met on an ongoing basis, your employment" may be terminated. Mr. Turner acknowledged that all of the issues raised in the Plan were issues that Brais had brought up before. After nearly two months and several meetings regarding Mr. Turner's performance, Brais determined that Mr. Turner was not improving sufficiently, and Mr. Turner's employment was terminated on August 11, 2009.

The Turners sued Defendant in April 2011, claiming that Defendant discriminated against Mr. Turner for associating with a disabled person in violation of the Americans with

3

Disabilities Act and Ohio Revised Code Chapter 4112; that Defendant terminated Mr. Turner's employment in order to prevent him and Mrs. Turner from continuing to use medical benefits in violation of Section 510 of ERISA; and that Defendant intentionally inflicted emotional distress upon Mr. and Mrs. Turner (doc. 1).

Defendant moved for summary judgment (doc. 24), and the motion is ripe for the Court's decision.

**II. STANDARD**

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

4

Fatton v. Bearden, 8 F.3d. 343, 346 (6th Cir. 1993), quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986)
(internal quotation marks omitted).

The process of moving for and evaluating a motion for
summary judgment and the respective burdens it imposes upon the
movant and non-movant are well settled.  First, "a party seeking
summary judgment ... bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of [the record] which it believes
demonstrate the absence of a genuine issue of material fact [.]"
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also
LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township
Trustees, 980 F.2d 399, 405 (6th Cir. 1982); Street v. J.C.D.
Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant
may do so by merely identifying that the non-moving party lacks
evidence to support an essential element of its case.  See
Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A., 12 F.3d
1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after
completion of sufficient discovery, must submit evidence in
support of any material element of a claim or defense at issue
in the motion on which it would bear the burden of proof at
trial, even if the moving party has not submitted evidence to

5

negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough

specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**III. Discussion**

7

### A. Discrimination on the Basis of Association

In Counts I and IV, Plaintiffs allege that Defendant discriminated against Mr. Turner because of his association with Mrs. Turner, "who is disabled, perceived as disabled, and/or has a record of a disability", in violation of both the Americans with Disabilities Act (the "ADA") and Ohio law (doc. 1).

### 1. Plaintiffs' ADA Claim

With respect to Count I, the ADA claim, Defendant moves the Court for summary judgment on the basis that Plaintiffs have presented no evidence that Mrs. Turner's medical expenses motivated Defendant's decision to terminate Mr. Turner's employment (doc. 24).

The ADA prohibits, <u>inter</u> <u>alia</u>, "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).  In the absence of direct evidence, as here, a plaintiff seeking to show discrimination on the basis of association with a disabled person in violation of the ADA must satisfy the elements of a <u>prima</u> <u>facie</u> case by showing that (1) he was qualified for the position; (2) he was subject to an adverse employment action; (3) he was known to have a relative with a disability; and (4) the adverse employment action

8

occurred under a circumstance that raises a reasonable inference that the disability of the relative was a determining factor in the decision. Stansberry v. Air Wisconsin Airlines Corp., 651 F.3d 482, 487 (6th Cir. 2011). Should the plaintiff be successful in establishing the prima facie case, the burden then shifts to the defendant to come forth with a legitimate reason for the adverse action; should the defendant do so, the burden then shifts back to the plaintiff to show that the defendant's reason is pretextual. Id. at 488.

Here, Plaintiffs satisfy the second and third prongs rather easily: Mr. Turner's termination was clearly an adverse action, and, assuming Mrs. Turner's diabetes rendered her disabled, Plaintiffs have shown that Defendant was aware of her condition. However, Plaintiffs have failed to adduce evidence establishing that Mr. Turner's termination "occurred under a circumstance that raises a reasonable inference that [Mrs. Turner's condition] was a determining factor in the decision." Plaintiffs assert that they have "established at least a question of fact regarding this prong" (doc. 27). In support, Plaintiffs note that "multiple…employees" knew about Mrs. Turner's diabetes and associated heart condition, and, they contend, they have established a question of fact as to whether Brais was aware of the "extraordinarily expensive nature" of

9

Mrs. Turner's condition.  They also contend that a "jury could conclude that Brais wished to avoid the distraction of [Mr.] Turner's repeated need to take time off for his wife's [condition] and terminated him in order to do so"  (Id.).

Notably, Plaintiffs make these contentions without citation to the record.  This is understandable, because there is no evidence in the record to which they could cite to support these contentions.  They have simply adduced nothing from which a reasonable juror could conclude that Brais was concerned about either the medical expenses associated with Mrs. Turner's care or about Mr. Turner's distraction.

As to the expenses, Plaintiffs have asserted that Mrs. Turner's expenses were "extraordinarily expensive" but have produced no evidence to support this—no invoices, no payment stubs, nothing that shows her expenses in relation to other employee health care expenses, no evidence at all.  They seem to suggest that a reasonable juror could infer that her costs were "extraordinary" because of the nature of her condition, but this is an impermissible, unsupported inference that no reasonable juror could make.  Diabetes and heart disease certainly can be costly, as can a multitude of other health problems.  They can also not be costly if they are controlled.  The point is, a reasonable juror would not make an inference on the basis of

speculation and guesses, could-be's and might-be's, but, instead, on the basis of actual evidence. And the record is devoid of such evidence.

Plaintiffs point to Mr. Turner's replacement and claim that he is someone who does not have a spouse "whose health care would be as extraordinarily expensive" as Mrs. Turner's care supposedly was. However, as above, there is no evidence in the record to support this claim. Nothing in the record supports this "extraordinarily expensive" characterization, and, in addition, Plaintiffs have produced nothing showing that the replacement's spouse or other dependents in fact have no health issue that could cost the company significant money. Instead, Plaintiffs have produced the unsupported affidavit of Mr. Turner, in which he speculates about his replacement's health costs. This is not evidence upon which anyone could reasonably rely to conclude that Defendant took Mrs. Turner's health condition into account in its decision to terminate Mr. Turner's employment.

Similarly, Plaintiffs seem to suggest that Brais should be imputed with the knowledge of Mrs. Turner's health care costs because he has experience disbursing medication for a health care company. Again, this inferential leap is simply unreasonable and unsupported. Brais testified that he did not

know her specific diagnoses, the prescribed treatment or her health care costs, and Plaintiffs have offered no evidence to refute or call that testimony into doubt.

As to Plaintiffs' claim that Defendant terminated Mr. Turner's employment because of concerns that he would be distracted, a theory raised for the first time in Plaintiffs' response to the instant motion, it fails for the same reason: no evidence in the record supports the claim. Plaintiffs have simply adduced no evidence showing that anyone employed by Defendant—let alone Brais, the decision-maker-was concerned about Mr. Turner being distracted in any way by his wife's condition. Plaintiffs contend that a jury could conclude that Mr. Turner's employment was terminated because Brais wanted to "avoid the distraction of [Mr.] Turner's repeated need to take time off to care for his wife" merely because Brais knew that Mr. Turner needed to take several days off during the first seven months of his employment for that purpose. It may be that "a jury" could conclude that, but, without more, it is not possible that a <u>reasonable</u> jury could.

In sum, Plaintiffs have not, as they are required to do, presented "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" and have failed to satisfy the elements of the

prima facie case for associational discrimination.  See Moore, 8 F.3d at 339-340.

Even if the Court were to find that Plaintiffs had satisfied the prima facie requirements, Plaintiffs would nonetheless not be successful in their attempt to overcome summary judgment because Mr. Turner's performance was a legitimate non-discriminatory reason for his termination, and Plaintiffs have failed to adduce evidence from which a reasonable jury could find that those reasons were merely pretext for impermissible discrimination.

Plaintiffs contend that a jury could reject Defendant's claims that Mr. Turner missed meaningful deadlines, that he failed to complete certain tasks after being reminded to do so, and that he failed to gain the requisite technical knowledge for his position.  As support for this contention, Plaintiffs offer, in essence, Mr. Turner's interpretation of the meaningfulness of the deadlines, the importance of the tasks he failed to complete, and the necessity of the technical knowledge he lacked.  This is simply insufficient to show pretext.  Instead, Mr. Turner's interpretation is merely another way of looking at some of the same events.  That is, he doesn't dispute that he missed deadlines, he simply asserts that a jury could find that the deadlines were unreasonable.  This misapprehends

the role of the fact-finder here.  It is not for the jury to decide whether the deadlines imposed by an employer and missed by an employee were reasonable or whether the tasks assigned the employee were important—those are clearly business judgment calls to be made by the employer.  Instead, the question before the jury is whether Mr. Turner's termination was on account of his wife's health condition.  Even if a jury disagreed with Defendant about the importance, say, of the items Mr. Turner failed to complete on time, such a disagreement cannot reasonably form a basis from which an inference of improper discrimination could legitimately be drawn.

Defendant has put into the record evidence showing that Mr. Turner's employment was terminated after he failed to improve his performance after he was warned and counseled repeatedly over the course of months.  Plaintiffs have not adduced any evidence-let alone "significant probative evidence"-from which a reasonable fact-finder could conclude that Mr. Turner's termination was instead based either on Defendant's desire to avoid paying for Mrs. Turner's costly health care (under the expense theory) or on fears that Mrs. Turner's medical condition might cause Mr. Turner to perform poorly (under the distraction theory). See, e.g., Stansberry, 651 F.3d at 489 ("[B]ecause his discharge was based on actually

14

performing his job unsatisfactorily, and not fears that his wife's disability might prevent him from performing adequately, [Defendant's] conduct is not prohibited by this section of the [ADA]"). Consequently, summary judgment is appropriate on Count I.

### 2. Plaintiffs' Ohio-law Claim

The parties dispute whether a cause of action for association-based discrimination exists under Ohio law. Defendant cites to Smith v. Hinkle Manuf., Inc., 36 Fed. Appx. 825 (6th Cir. 2002), asserting that the Sixth Circuit has made clear that such a cause of action does not exist under Ohio law (doc. 24). Plaintiffs cite to Berry v. Frank's Auto Body Car Star, Inc., 817 F.Supp.2d 1037, 1048 (S.D. Ohio 2011) for support for their assertion that Ohio law does recognize such a claim (doc. 27). The Court need not decide this issue and thus declines to do so. Because the Court is granting Defendant's motion for summary judgment as to Plaintiffs' federal claims, the Court therefore declines to exercise jurisdiction over Plaintiffs' state-law claim and DISMISSES Count IV without prejudice.

### B. Interference with the use of Medical Benefits

ERISA makes it illegal for an employer to "discharge ... a participant or beneficiary ... for the purpose of

interfering with the attainment of any right to which such participant may become entitled under [an employee welfare benefit] plan...." 29 U.S.C. § 1140. In their complaint, Plaintiffs allege that Mr. Turner was fired in order to prevent him and Mrs. Turner from continuing to use their medical benefits (doc. 1). In their response to Defendant's motion for summary judgment, Plaintiffs claim that Mr. Turner was fired because of the increased cost of Mrs. Turner's medical care associated with her diabetes (doc. 27). Regardless of how they are framed, Plaintiffs' ERISA claims do not survive summary judgment.

To prevail on this claim at trial, Plaintiffs would have to prove the existence of "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992). Plaintiffs would not have to show that Defendant's "sole purpose" was to interfere with the right to receive health benefits, only that interference with such benefits "was 'a motivating factor' in the decision." Id.

As an initial matter, Defendant contends that Mrs. Turner does not have a separate claim for an ERISA violation here (doc. 24). The Court declines to address that contention

16

because even assuming, _arguendo_, that she does, her claim, like her husband's fails, and for the same reason: Plaintiffs simply have not adduced any evidence—whether direct or circumstantial-that the use of their medical benefits was a motivating factor in Defendant's decision to terminate Mr. Turner's employment. In fact, there is no evidence in the record that the use of their benefits was even considered by Defendant.

Plaintiffs concede that they do not have direct evidence to support their ERISA claims, but they contend that "[p]roximity to attaining eligibility for substantial benefits is sufficient to establish a _prima facie_ case, especially if coupled with evidence that [Defendant] took the Turners' proximity to attaining eligibility into account in its decision" (doc. 27, _citing_ _Pennington v. Western Atlas, Inc._, 202 F.3d 902, 906 (6th Cir. 2000)). They rely on their arguments and evidence set forth to support their associational disability discrimination claims to also support their ERISA claims.

Where there is no direct evidence that an employer intended to interfere with a plaintiff's rights under ERISA, courts employ the burden-shifting regimen described in _McDonnell Douglas Corp. v. Green_, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). _See_ _Humphreys_, 966 F.2d at 1043. Under _McDonnell Douglas_, the plaintiff has the burden of making out a _prima_

17

facie case of impermissible discrimination.  If the plaintiff carries that burden, it becomes the defendant's burden to articulate a nondiscriminatory reason for the challenged action. See Hinkle Manuf., Inc., 36 Fed. Appx. at 828. If the defendant does so, the McDonnell Douglas burden-shifting disappears.  Id. At that point, the plaintiff may succeed by demonstrating that the employer's proffered explanation for its actions is merely a pretext for discrimination. Id.

As discussed above, the evidence Plaintiffs rely on fails to create a genuine issue of fact.  First, and critically, Plaintiffs have produced no evidence demonstrating that they were prevented from "attaining substantial benefits."  On the contrary, they testified that they received all of the benefits to which they were entitled while Mr. Turner was employed by Defendant, and they continued to receive medical benefits for a year and a half after Mr. Turner's termination.  Plaintiffs have adduced no evidence to refute this or to otherwise demonstrate that they were prevented from "attaining substantial benefits."

Second, even if the Court were to assume that Plaintiffs were so prevented, as discussed above in the context of Plaintiffs' associational disability claims, they have not adduced "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt", Moore, 8 F.3d at

339-340, as to whether Defendant took Mr. Turner's "proximity to attaining eligibility into account in its decision" (doc. 27). Plaintiffs have presented their speculation and their assertions that a jury "could" find that Defendant's proffered justification for Mr. Turner's termination was pretextual, but, critically, they have offered no <u>evidence</u> from which a jury could <u>reasonably</u> reach that conclusion.  As just one example, as noted above, Plaintiffs assert that Mr. Turner was fired because of the increased cost of Mrs. Turner's medical care associated with her diabetes (doc. 27).  However, Plaintiffs have not produced any evidence at all regarding the cost of Mrs. Turner's care—let alone <u>that</u> it was or <u>how</u> it was "increasing".  Neither did they produce evidence that Brais—who made the decision to terminate Mr. Turner's employment-had any knowledge at all of those costs.  Making an inference in Plaintiffs' favor from the evidence that <u>is</u> in the record, it can reasonably be said that Brais likely knew of Mrs. Turner's diabetes and associated complications.  But there is nothing in the record to support taking the massive inferential leap that he was aware of any of the costs associated with her care.

Plaintiffs' reliance on <u>Pennington</u> is unavailing.  In <u>Pennington</u>, laid-off employees sued their former employer for, in relevant part, interfering with their benefits in violation

of ERISA.  202 F.3d 902.  Because of their termination, the employees received significantly less in pension and medical benefits than they would have had they been allowed to continue working for approximately five more years. Id. at 904.  In reaching its decision in favor of the employees, the court relied on the considerable damning evidence before it.  For example, the plaintiffs presented both a memorandum prepared by a company employee that identified employees by salary, age, disability, premature births of children, and surgeries and evidence that the memorandum was used to determine which employees would be terminated.  Id. at 905.  In addition, the plaintiffs presented evidence that clearly refuted the company's stated reasons for their termination, including testimony from direct supervisors and co-workers. Id.  Thus, the Pennington court had evidence from which a reasonable jury could infer that the company's proffered justifications for terminating the affected employees had no basis in fact and were therefore pretextual. Id.

Here, as noted above, Plaintiffs have not identified which benefits they would otherwise have imminently qualified for had Mr. Turner not been fired.  The Court is therefore left to assume that they are referring to the company's portion of their insurance premiums, which, because they continued their

20

medical coverage through the company for a year and a half after his termination, is the only benefit they appear to have lost. However, Plaintiffs fail to recognize that there is a qualitative difference between being deprived of a full pension just years before becoming eligible, expressly because the company wanted to save money, as was the case in Pennington, and having to pay the company's portion of medical insurance premiums. In addition, Plaintiffs have produced no evidence remotely comparable to that set forth in Pennington from which a finder of fact could reasonably infer that, rather than terminating Mr. Turner because of the performance issues cited, Defendant instead fired Mr. Turner in order to deprive Plaintiffs of benefits they were going to attain.

Plaintiffs have neither cited to cases nor produced evidence that would compel the Court to find that, under these circumstances, Mr. Turner's termination prevented them from attaining significant benefits merely because they had to pick up the company's portion of the insurance premiums. Even if the Court were to find to the contrary, Plaintiffs have not adduced "significant probative evidence" that Defendant's proffered reasons for Mr. Turner's termination were pretextual. Consequently, Plaintiffs' ERISA claims (Counts II and III) cannot survive summary judgment.

21

### C. Intentional Infliction of Emotional Distress

Although Plaintiffs raise a claim for Intentional Infliction of Emotional Distress ("IIED") in their complaint, they not only do not present any evidence rebutting Defendant's motion for summary judgment on this claim, they completely fail to address it at all.  The Court thus finds that Plaintiffs have failed to demonstrate that a genuine dispute of material fact exists with respect to their IIED claim.  Defendant's motion for summary judgment on Count V is therefore GRANTED.

### IV.       Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment as to Counts I, II, III, and V and DISMISSES WITHOUT PREJUDICE Count IV (doc. 24).  This matter is therefore closed on the Court's docket.


   SO ORDERED.

Dated:  October 2, 2012   /s/ S. Arthur Spiegel _____
                          S. Arthur Spiegel
                          United States Senior District Judge

22